**Joseph J. GNALL, Jr., and Susan E. Gnall, his wife, Plaintiffs,**

v.

**ILLINOIS WATER TREATMENT COMPANY and Stover Tanks, as purchased by Bell & Gossett, a division of International Telephone & Telegraph Corporation, Defendants,**

v.

**ROBERT J. SIGEL, INC., Turner Construction Company and Corbit's Inc., Third Party Defendant.**

Civ. No. 85–0452.

United States District Court, M.D. Pennsylvania,

July 11, 1986.

---

Joseph P. Coriello, Jill Miller, Clarks Summit, Pa., for plaintiffs.

William Dempsey, Timothy Foley, James Howley, Scranton, Pa., for defendants.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

On May 28, 1986 this Court conducted a non-jury trial the object of which was to determine whether the Statute of Repose, 42 Pa.C.S.A. § 5536, may serve as a valid defense to any or all Defendants in this products liability lawsuit initiated on April 8, 1985. The theory of recovery is that Plaintiff slipped and fell from a tank which

was an inherently dangerous product by reason of its lack of a non-slip surface and/or "grab bars". That Plaintiff suffered serious injuries is not in dispute and the question we must now resolve is whether said tank is properly viewed as a mere product in terms of Section 402(a) of the Restatement (Second) of Torts or, rather, is more properly viewed as an "improvement to real property" in terms of the Pennsylvania Statute of Repose.

The tank from which Plaintiff fell is one of a series of tanks which, together with much piping and many valves and gauges, comprise an elaborate water treatment system at the RCA manufacturing facility in Dunmore, Pennsylvania. If we are to find that Plaintiff's action survives, we must first find that one or more of the Defendants are persons or entities which the Pennsylvania Legislature did not wish to afford protection when it enacted the Statute of Repose.

The Statute of Repose states in pertinent part:

(a) General Rule.— ... a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(3) Injury to the person or for wrongful death arising out of any such deficiency.

The above-quoted language makes it plain that to be afforded the protection of the statute a Defendant must demonstrate that: (a) more than 12 years have elapsed between the completion of the improvement and the injury complained of; (b) the allegedly defective product or structure which caused the injury constitutes an "improvement to real property"; and (c) it is one of the class of persons "lawfully performing or furnishing the design, planning,

supervision or observation of construction, or construction" of the object in question.

■ In the instant case there can be no argument that the 12 year provision of the statute is met by all Defendants. Indeed, the parties have stipulated that work on the water treatment system was concluded in 1969 and Plaintiffs' mishap occurred in 1983. Thus, sufficient time elapsed between installation and injury to enable all Defendants to meet the 12 year provision of the Statute of Repose.

■ Similarly, we find that the water treatment system at RCA is an "improvement to real property" in terms of Pennsylvania case law. In the case of *Mitchell v. United Elevator Co.*, 290 Pa.Super. 476, 434 A.2d 1243 (1981), the Superior Court of Pennsylvania relied upon the definition of "improvement" found in Black's Law Dictionary in considering a case which featured an argument on the Statute of Repose. Said definition is:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purpose. . . .

After hearing the testimony of Michael Howell, an employee of Defendant Illinois Water Treatment Company, to the effect that, as a unit, the water treatment system at RCA would not have utility elsewhere because it was designed specifically to treat the water available at that site[1] and bring it to the exact quality demanded for RCA's particular industrial application, we were inclined to find that the system is an "improvement to real property". We were so inclined because it seemed clear that RCA could not conduct its operations in Dunmore without the system. Hence, the water treatment system is not merely an improvement but, rather, is a virtual neces-

---

1. Mr. Howell also testified as to the great differences which can exist between water found in one area and water found in other areas as a

sity.[2] Our inclination was further bolstered by our inspection of the system on the afternoon of May 28, 1986. It is a huge installation, obviously designed with the specific building in mind. Moreover, it is installed in such a manner that it is virtually permanent and obviously could not be taken off the site except with enormous expense and potential for damaging the building itself.[3] In light of the testimony and our visual inspection of the water treatment system, we have absolutely no reservation in finding as a matter of law that it constitutes an "improvement to real property" as conceptualized in *Mitchell*, supra. Therefore, all Defendants played a part in designing or constructing such an improvement and all Defendants satisfy the second criterion for protection under the Statute of Repose.

■ It is the third criterion—the determination as to whether all Defendants herein are among the class the legislature sought to protect in enacting the Statute of Repose—which is the thorny question. It is eminently plain that Defendants Illinois Water Treatment Company (designer of the system), Robert J. Sigel, Inc. (the firm which supervised the installation), and Turner Construction Company and Corbit's, Inc. (the firms which performed the tasks incident to the installation) are among that class of persons "furnishing the design, planning, supervision or observation of construction, or construction" and are, thus, not appropriate targets of this complaint.

It is, however, less clear whether Stover Tanks (now owned by Bell and Gossett, a division of ITT) is among the class the legislature sought to protect when it enacted the statute. Stover's role was to manufacture the various tanks which are a prominent part of the water treatment system. Plaintiff would have us consider these tanks in isolation as mere products rather than as integral portions of an "improvement to real estate". Plaintiff argues that to do otherwise would emasculate § 402(a) of the Restatement (Second) of Torts and would amount to a gross misconstruction of legislative intent.[4] We do not agree.

## A. PLAINTIFFS' ARGUMENT

Plaintiff relies heavily on the case of *Kovach v. The Crane Company, et al.*, No. 82–0530, slip op. (M.D.Pa. May 18, 1983). In that case U.S. District Judge Malcolm Muir declined to afford the protection of the Statute of Repose to the manufacturer of a boiler which exploded and caused the death of two men. While Judge Muir found unequivocally that the boiler had been installed more than 12 years prior to the accident and that the boiler was an "improvement to real estate, he found that the manufacturer of the boiler was not a member of the class the legislature sought to protect when it enacted the statute.

In wrestling with the problem of whether "construction" as used in the Statute of Repose is tantamount to "manufacturing", Judge Muir resorted to legislative history to get some inkling as to the legislature's intent. Noting that there was "... no relevant legislative history regarding the intent of the Pennsylvania legislature with respect to the promulgation of Section 5536 ..." (See *Kovach*, supra, at 15), Judge Muir looked to the "modest" and "somewhat illuminating" legislative history of Section 5536's "predecessor statute", 12

---

result of PH level, water soluble minerals, organic matter, etc.

**2.** Pennsylvania law recognizes the "assembled plant doctrine" which holds that machinery vital to the business operation of an industrial plant which is permanently installed therein may properly be considered part of the real estate. See *Singer v. Redevelopment Authority of City of Oil City*, 437 Pa. 55, 261 A.2d 594 (1970).

**3.** We note that Plaintiffs' counsel spent much time questioning various witnesses as to the possibility of taking the system off the premises. He did elicit a response from Mr. Howell to the effect that "anything can be done". This, however, is not the test and we note that an object need not be a fixture to be an "improvement to real estate". (See *Keeler v. Penn.D.O.T.*, 56 Pa. Commw.Ct. 236 (1981).

**4.** See Plaintiff's Final Reply Brief On The Statute Of Repose, Docket Item 68 at page 2.

Pa.Cons.Stat.Ann. § 65.1 (repealed). That history includes statements made on the floor of the House of Representatives by a Representative Mebus of Montgomery County.[5] The gist of Mr. Mebus' remarks is that 12 Pa.Cons.Stat.Ann. § 65.1 was designed solely for the protection of architects, engineers, and contractors.[6]

Judge Muir then writes:

The Pennsylvania Supreme Court has also suggested that Section 5536 and its predecessor, Section 65.1, do not apply to suppliers of products who might have liability under Section 402A of the Restatement 2d of the Law of Torts, and apply only to builders who might not have such product liability. *Kovach*, supra, at 16.

The Supreme Court case being referred to in the quote above is *Freezer Storage v. Armstrong Cork Company*, 476 Pa. 270, 382 A.2d 715 (1978). The pertinent language of *Freezer Storage*, supra, is found at pages 276–77, 382 A.2d 715:

[There] are no cases on whether *suppliers* are ever to be classed as persons "lawfully performing ... the design, planning ... or construction of [improvements to real property]." However, assuming arguendo that suppliers are not within the class of builders, the distinction drawn between the two classes is rational. Suppliers, who typically produce items by the thousands, can easily maintain high quality-control.

From this language of the Pennsylvania Supreme Court, Judge Muir concluded that "... the better interpretation is that the intent of Section 5536 is to protect those persons involved in the *construction* of improvements to real property." (*Kovach*, supra, at 18). He then ruled that the *manufacturers* of the defective boiler could not be seen as having *constructed* said boilers because when the boilers left their control they could not yet logically be seen as "improvements to real estate". Thus, he reasoned, the 12 year Statute of Repose was not available as a defense to said manufacturers. Plaintiff, in turn, reasons that this well-delineated opinion is the best available discussion of the breadth of coverage afforded by the Statute of Repose.

### B. DEFENDANTS' ARGUMENT

Defendants urge that we rely on a recent decision of the Pennsylvania Superior Court, *Catanzaro v. Wasco Products, Inc.*, 339 Pa.Super. 481, 439 Pa.Super. 481 (1985), which, of course, was rendered much subsequent to *Kovach*. *Catanzaro*, supra, perhaps significantly, does not make mention of *Kovach* in the process of explicitly extending the protection of the Statute of Repose to "... include defendant *manufacturers* who had designed, planned or constructed improvements to real property". (emphasis ours). See *Catanzaro*, supra, at 486, 439 Pa.Super. 481, citing *Mitchell*, supra. *Mitchell*, referred to earlier in another respect, is a pre *Kovach* decision of the Pennsylvania Superior Court in which Westinghouse Electric Company, the manufacturer of an elevator which malfunctioned and caused an elderly man to break his hip, successfully appealed an adverse judgment of the Court of Common Pleas of Philadelphia County.[7] In explaining its re-

---

**5.** There is no indication as to whether Mr. Mebus was one of the bill's sponsors or was merely a person who agreed with the obvious beneficial effect the bill would confer upon certain groups.

**6.** Our own research disclosed that Pennsylvania was one of some 30 states which enacted these limitation of action statutes in the late 1960's in response to a concerted lobbying effort by the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors. See Catholic University Law Review, Vol. XVIII at page 365 (1969).

**7.** In writing *Kovach*, Judge Muir does note that *Mitchell* does run contrary to his decision that a supplier/manufacturer is not to be construed as having constructed an improvement to real property. Judge Muir dismissed *Mitchell* as a situation wherein the supplier/manufacturer and the designer were one and the same. This, he felt, was the reason the Superior Court had afforded Westinghouse statutory protection in *Mitchell*. Our reading of *Mitchell* does not persuade us that the *Mitchell* Court based its decision on what *Kovach* terms the "builder/supplier distinction".

versal of the lower court's decision as to Westinghouse, the Superior Court stated:

... We hold that the construction of the elevator in question in 1950 was the "construction of any improvement to real property."

The lower court seems to be likening the building of an elevator system with all its myriad components, motors, cables, wiring and machinery to uncrating and plugging in a television set. The fact that the basic design of the elevator may be identical in different buildings does not render the elevator system any less an improvement to real estate. See *Mitchell* at 488, 434 A.2d 1243.

We think that the installation of the water treatment system in the instant case was at least as problematic and as much a melding of disparate components into a workable improvement as was the elevator in *Mitchell*. As such, it is every bit as logical that we refuse to view the parts of the water treatment system in isolation here.

In addition to its citation of *Mitchell* as precedent establishing that a manufacturer can, indeed, be viewed as one having constructed an improvement to real property, the *Catanzaro* Court cites with approval an even earlier decision of the Pennsylvania Superior Court, *Leach v. Philadelphia Savings Fund Society,* 234 Pa.Super. 486, 340 A.2d 491 (1975). *Leach,* supra, is cited for the proposition that 12 Pa.Cons.Stat. Ann. § 65.1 (the "predecessor statute")

... identifies its class not by the status or occupation of its members but rather by the contribution or acts done in relation to the improvements to real property. Thus, the statute immunizes from liability after 12 years "any" person lawfully performing or furnishing such activities. The word "any" is generally used in the sense of "all" or "every" and its meaning is most comprehensive. See *Leach* at 490–91, 340 A.2d 491.

Read in connection with the Statutory Construction Act of 1972, 1 Pa.Cons.Stat.Ann. § 1928(c) (1980), which codifies a presumption favoring liberal construction of statutes, the above quotation from *Leach*

makes a powerful argument that the protection of the Statute of Repose is not limited to members of certain professions (status) but, rather, extends to anyone who participates in any way in making an "improvement to real property" a reality.

■ *Catanzaro* ultimately rejects an argument that the manufacturer of the defective skydome, the failure of which caused the injury in that case, should not be shielded by the Statute of Repose because the manufacturer did not have to customize the product to the real estate and assist in its installation. Judge Olszewski, in affirming a grant of summary judgment in favor of the defendant/manufacturer by the Allegheny County Court of Common Pleas, wrote unequivocally:

Appellant cites no authority for such a restrictive reading of the statute. In fact, this Court in Mitchell rejected an interpretation of Sec. 5536 very similar to that espoused by appellant. In Mitchell, the trial court held that an elevator manufacturer was not protected by the act, because construction of an elevator was "like supplying a ready made item that was merely incorporated into the building." 290 Pa.Super. at 488, 434 A.2d at 1249. This Court rejected that narrow view of the act's scope and stated that "the fact that the basic design of the elevator may be identical in different buildings does not render the elevator any less an improvement to real estate." 290 Pa.Super. at 488, 434 A.2d at 1249. Appellant's argument advocating a restrictive reading of the act's coverage is not supported by either the statutory language or the case law. This Court concludes that the appellees, as alleged manufacturers of the skydome, necessarily planned, designed and built the skydome, and are, therefore, persons within the class afforded protection by the act.

Thus, it is utterly apparent that the Superior Court of Pennsylvania believes that the Statute of Repose extends to manufacturers who supply components which, in combination with others, become part and parcel of an "improvement to real estate"—a

belief which is diametrically opposed to that expressed by our colleague Judge Muir in *Kovach*.

Defendants argue that Plaintiffs' counsel's position, that the water treatment system be viewed as a series of components, would, if credited, create a situation wherein an object would have to be monolithic to constitute an "improvement to real estate" as contemplated in the Statute of Repose. This, they argue, would be inconsistent with other case law of the Middle District. They refer to a decision authored by Chief Judge Nealon, *Patraka v. Armco Steel Co.*, 495 F.Supp. 1013 (1980), wherein it was held that in determining what constitutes an "improvement to real estate" one must look the whole improvement and not just portions thereof.[8]

In essence then, Defendants argue that *Catanzaro* and its progeny illustrate the law of Pennsylvania regarding the breadth of protection afforded defendant manufacturers who supply components which become integral parts of "improvements to real estate." They urge us to reject *Kovach* as a decision out of the mainstream and to embrace the *Catanzaro* doctrine enlarging the scope of coverage afforded by the statute.

## C. LIKELY RESULT IN THE PENNSYLVANIA SUPREME COURT

The Third Circuit Court of Appeals has cautioned its district courts that changes in "basic tort law"[9] should emanate from the Supreme Court and not the Superior Court. See *Vargas v. Pitman Manufacturing Co.*, 675 F.2d 73, 76 (1982). We are, thus, obliged to predict whether the Pennsylvania Supreme Court will ultimately sanction the *Kovach* approach or that expressed in *Catanzaro*. We now predict that the *Catanzaro* doctrine will hold sway.

We, of course, do not lightly gainsay an Opinion of a jurist as erudite as Judge Muir. We note, too, that had he the benefit of reading *Catanzaro* as we had, *Kovach* may well have come to a different result. Our problem with *Kovach* is threefold: (a) our concern that reliance on the "somewhat illuminating" legislative history of a repealed statute may well have been misplaced; (b) our belief that the *Mitchell* decision—seemingly dismissed as an aberration in *Kovach*—was not predicated upon the idea that Westinghouse, Inc. was both designer and supplier of the elevator which was the focus of that case; and (c) our perception that a subsequent appellate decision in Pennsylvania, *Catanzaro*, refuses to take the restrictive view of the breadth of coverage afforded by the Statute of Repose taken in *Kovach*.

■ Regarding the logic of the *Catanzaro* decision, we see it as a logical progression from the principles expressed in *Leach* and *Mitchell*[10] and the most recent example of a trend in Pennsylvania's courts to liberally construe the Statute of Repose to extend its protection, after passage of 12 years, to any entity that has contributed to the formation of an "improvement to real estate." We are struck by the unequivocal aspect of the *Catanzaro* decision and we now predict that *Catanzaro* and not *Kovach* renders the interpretation of the Statute of Repose more likely to be adopted by the Pennsylvania Supreme Court. We believe this to be a logical prediction stemming from our responsibility, in the absence of a decision of the Pennsylvania Supreme Court, to "... consider relevant *state* precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." (emphasis ours). See *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 663 (3d Cir.1980). We now find, as a matter of

---

**8.** See Supplemental Brief of Robert J. Sigel, Inc. (Docket Item 64) at page 3.

**9.** We do believe that extending the protection of the Statute of Repose to manufacturers/suppliers likely represents such a change.

**10.** Discussed at pages 819 and 820 above.

law, that all named Defendants herein are afforded the protection of the Statute of Repose with respect to the unfortunate accident suffered by Mr. Gnall. An Order consistent with this finding follows.

### ORDER

NOW, this 11th day of July, 1986, IT IS ORDERED as follows:

1. It is the verdict of this Court that Plaintiff may not maintain this lawsuit against any Defendant named herein due to the limitations period imposed by 42 Pa.C.S.A. § 5536.

2. The Clerk of Courts is directed to enter judgment in favor of each Defendant and close this case.