Betty Jane LUZADDER, Executrix of the Estate of David P. Luzadder, Deceased, Plaintiff,

v.

DESPATCH OVEN COMPANY and Eclipse, Inc., Defendants,

v.

HONEYWELL, INC., Third-Party Defendant.

Civ. A. No. 81–2145.

United States District Court, W.D. Pennsylvania.

Dec. 30, 1986.

Kenneth J. Yablonski, Yablonski, King, Costello, & Leckie, Washington, Pa., for Luzadder.

Louis B. Loughren, Pittsburgh, Pa., for Honeywell.

Robert G. Simasek, Pittsburgh, Pa., for Eclipse.

Patrick Riley, Timothy J. Burdette, Egler, Anstandig, Garrett & Riley, Pittsburgh, Pa., for Despatch.

OPINION

COHILL, Chief Judge.

Plaintiff, Betty Jane Luzzader, brought this diversity action against defendants, Despatch Oven Company ("Despatch") and Eclipse, Inc. ("Eclipse"), based on theories of strict liability, intentional tort, negligence, breach of warranty and loss of consortium for the wrongful death of her husband, David P. Luzzader. Plaintiff's decedent was seriously injured when a heat-treating oven exploded at the Brockway Glass Company ("Brockway") in Washington, Pennsylvania, where he was employed. The oven, a large, natural gas-fired furnace, was used to heat molds which are installed in glass bottle-making machines. It was designed and manufactured by Despatch and sold to Brockway in March of 1965. The oven contained an atmospheric box burner, manufactured by Eclipse, which regulated the supply of gas that entered the oven-burning chamber. It also contained a protectorelay or combustion safeguard, manufactured by Honeywell, Inc. ("Honeywell"), which constituted part of a safety system intended to prevent explosions caused by improper or unsafe oven operation. The Despatch oven was connected to the Brockway plant's system of ductwork to provide for fresh air intake and exhaust. Deposition of Robert Jung at 20–21. Since the oven was gas-fired, it was also connected to the plant's gas pipeline system. Deposition of Gregory Allen Bushko at 28.

The oven exploded on December 2, 1980 while Mr. Luzzader, a foreman at Brockway, was checking it. Plaintiff alleges that the oven exploded because the "spud" which was screwed into the atmospheric burner box became unthreaded and fell out, permitting an explosive amount of gas to enter the oven. On May 1, 1982, Mr. Luzzader committed suicide, allegedly because of the intolerable injuries he sustained in the explosion.

This action was filed on December 1, 1981. Thereafter, defendants Despatch and Eclipse filed cross-claims against each other for indemnification and/or contribu-tion. Defendant Eclipse also filed a third-party complaint against Honeywell for indemnification and/or contribution in the event that Eclipse was found liable. Honeywell, in turn, filed a similar third-party cross-claim against Despatch. Collectively, the defendants have moved for summary judgment on the grounds that plaintiff's claim is barred by Pennsylvania's 12-year statute of repose, 42 Pa. C.S.A. § 5536 which provides, in pertinent part, as follows:

§ 5536. Construction projects

(a) General rule.— ... a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.

(2) Injury to property, real or personal, arising out of any such deficiency.

(3) Injury to the person or for wrongful death arising out of such deficiency.

(4) Contribution or indemnity for damages sustained on account of any injury mentioned in paragraph (2) or (3).

.        .        .        .        .

(c) No extension of limitations.—This section shall not extend the period within which any civil action or proceeding may be commenced under any provision of law.

Here, the Despatch oven was incorporated into the Brockway plant more than 15 years before the accident occurred. Thus, the undisputed chronology of events leading to this litigation is such that if § 5536 is applicable, plaintiff's claim is time-barred.

We find that § 5536 does insulate all of these defendants from plaintiff's claims, and summary judgment will be entered in their favor.

Plaintiff argues that this statute does not apply because (1) it is a statute of limitations which was waived by the defendants; (2) the oven did not constitute an "improvement to real estate" within the meaning of § 5536; and (3) defendants Eclipse and Honeywell are manufacturers of component parts marketed for general use and, thus, are not insulated from liability under § 5536.

*Summary Judgment*

When considering a motion for summary judgment, the Court must determine whether the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, when viewed in the light most favorable to the non-moving party, present a genuine issue as to any material fact. If not, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The materiality of a disputed fact is determined by looking to the substantive law of the case. Disputes over facts which will not affect the outcome of the case do not preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. ——, ——, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202, 211 (1986).

The moving party bears the burden of proving that no genuine issue exists. *Adickes v. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, this burden can be discharged by merely pointing out the "absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. ——, ——, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986). Once the moving party has met that burden, it becomes incumbent upon the non-moving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." 477 U.S. at ——, 106 S.Ct. at 2553, 91 L.Ed.2d at 273. Any doubts must be resolved in favor of the non-moving party. *Gans v. Mundy*, 762 F.2d 338,

341 (3d Cir.1985) (quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981)).

## DISCUSSION

### I.  BACKGROUND

The predecessor statute to § 5536, 12 Pa.S.A. § 65.1 (repealed), like similar legislation in a majority of states, was enacted in the late 1960's as a result of the concerted lobbying efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America. *See, e.g., Gnall v. Illinois Water Treatment Co.*, 640 F.Supp. 815, 819 n. 6 (M.D.Pa.1986); *Jackson v. Mannesmann Demag Corporation*, 435 So.2d 725 (Ala.1983); *Tabler v. Wallace*, 704 S.W.2d 179 (Ky.1985). *See generally*, Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action*, 18 Cath. U.L. Rev. 361 (1969). The statute was designed to protect architects, engineers, and contractors from exposure to delayed liability; that is, openness to legal claims long after they had completed "improvements to real property," which often have long life expectancies. *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 283, 382 A.2d 715, 722 (1978) (Manderino, J., dissenting). The legislation is intended to cut off liability at the point when a contractor, architect or engineer would be unfairly prejudiced in attempting to assert a defense to charges of defective design or construction. *Id.; Patraka v. Armco Steel Co.*, 495 F.Supp. 1013, 1019 (M.D.Pa.1980).

### II.  42 PA.C.S.A. § 5536 IS A NON–WAIVABLE STATUTE OF REPOSE

■ It is well settled that 42 Pa.C.S.A. § 5536 is a non-waivable statute of repose which completely abolishes any personal injury cause of action arising out of deficiency in the design, planning, supervision of construction, or construction of improvements to realty after the expiration of 12 years following completion of the improvement. *Catanzaro v. Wasco Products, Inc.*, 339 Pa.Super. 481, 484, 489 A.2d 262,

264 (1985); *Mitchell v. United Elevator Co.*, 290 Pa.Super. 476, 483, 434 A.2d 1243, 1249 (1981). Recently, the Pennsylvania Superior Court laid to rest any contention that § 5536 is waivable when it stated: "[s]ince this is a statute of repose, the liability is extinguished upon passage of the twelve years and it is a non-waivable right, contrary to a statute of limitations, which is waived, if not alleged, in a responsive pleading." *Fetterhoff v. Fetterhoff*, 354 Pa.Super. 438, 441, 512 A.2d 30, 32 (1986) (citing *Mitchell*).

Unlike a statute of limitations, the instant statute of repose erects a bar to lawsuits even before a cause of action may have accrued; thus it can be raised as a defense at any point in the case. *Patraka*, 495 F.Supp. at 1019; *Mitchell*, 290 Pa.Super. at 487, 434 A.2d at 1249. Consequently, we conclude that defendants have not waived this defense by failing to raise it in their answers.

### III. THE DESPATCH OVEN CONSTITUTES AN IMPROVEMENT TO REAL ESTATE WITHIN THE MEANING OF § 5536

■ We now turn to the issue of whether the Despatch oven constitutes an "improvement to real property" within the meaning of § 5536. Initially, we note that § 5536 does not define the term "improvement to real property." However, Pennsylvania courts, in compliance with the presumption favoring the liberal construction of statutes, 1 Pa.C.S.A. § 1928(c), have construed this language broadly to provide maximum coverage under the statute. *Fetterhoff v. Fetterhoff, supra* (elevator shaft is "improvement to real property"); *Catanzaro v. Wasco Products, Inc., supra,* (skydome located on school roof deemed "improvement to real property"); *Mitchell v. United Elevator Co., supra* (elevator); *Keeler v. Commonwealth Department of Transportation,* 56 Pa. Commwlth. 236, 424 A.2d 614 (1981) (highway guardrails, lights, signs and direction signals). *See also Stellute v. Realty Operating Co.,* 131 P.L.J. 162 (C.P. Allegheny 1982) (revolving door); *Fromm v. Frankhouser,* 7 Pa.D & C 3d 560 (C.P. Lancaster 1977) (furnace in mobile home). Our research has disclosed no Pennsylvania decision which directly supports plaintiff's position.

Plaintiff, however, relies on *Kaczmarek v. Mesta Machine Co.,* 324 F.Supp. 298 (W.D. Pa. 1971), *aff'd on other grounds,* 463 F.2d 675 (3d Cir.1972), which was authored by Judge Weber of this District. *Kaczmarek* involved a 50 ton crane used in steel production. The crane was attached to a steel mill and could not be removed without causing substantial damage to that structure. In holding that the crane was not an improvement to real property, Judge Weber reviewed the law of Pennsylvania in analogous areas such as fixtures, real estate assessment, and statutory construction. While we find the decision in *Kaczmarek* to be logically persuasive, we do not believe that it is consistent with the more recent Pennsylvania decisions applying § 5536. It is important to note that *Kaczmarek*, which interpreted the predecessor statute to § 5536, was decided in 1971 and preceded all of the relevant Pennsylvania cases interpreting this statute. It follows, therefore, that *Kaczmarek* must be read in its proper context, and we are mindful of the difficult task Judge Weber faced in having to construe a newborn statute without any guidance from relevant state judicial decisions or a precise legislative history. Needless to say, our reluctance to follow *Kaczmarek* results from our conclusion that it is in direct conflict with subsequent Pennsylvania decisions.

Plaintiff also relies on *Patraka, supra,* in support of her argument that a distinct component of an entire construction project cannot by itself constitute an "improvement to real property." In that case, which, like *Kaczmarek*, was decided prior to the *Mitchell—Catanzaro* line of cases, the court stated that "[t]he phrase 'improvement to real property' generally refers to a structure or matter affixed to the realty and not each component part, such as a foundation or subbase, a plumbing or

drainage system, or a roof or roadway surface." 495 F.Supp. at 1019 (footnote omitted). However, this restrictive interpretation of the term "improvement" is also at odds with the trend of cases in Pennsylvania construing § 5536 broadly and as a federal court sitting in diversity jurisdiction, we are bound to apply state law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194 (1941).

Further support for defendants' position exists in *Gnall v. Illinois Water Treatment Co., supra,* where Judge Conaboy of the Middle District of Pennsylvania renders a compelling analysis of § 5536. *Gnall* involved a tank which, along with other tanks, valves, piping and guages, comprised an elaborate water treatment system at a manufacturing facility. 640 F.Supp. at 817. Relying on *Catanzaro, Mitchell* and other Pennsylvania cases, the Court held that this "water treatment system is not merely an improvement but, rather, is a virtual necessity" to the operation of the facility. 640 F.2d at 817–18. Because § 5536 does not define the term "improvement," the *Gnall* court, like the Pennsylvania Superior Court in *Mitchell,* utilized the following definition provided by Black's Law Dictionary:

> A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally, buildings, but may also include any permanent structure....

Black's Law Dictionary 682 (5th ed. 1979). *See Mitchell,* 290 Pa.Super. at 488, 434 A.2d at 1249.

Plaintiff further argues that the oven could have been removed without damaging the structure and thus, it was not part of the realty. However, "an object need not be a fixture to be an improvement to real estate.'" *Gnall,* 640 F.Supp. at 818 n. 3 (citing *Keeler, supra* ). Moreover, under the "assembled plant doctrine" in Pennsyl-

vania, if machinery is vital to the business operation of an industrial plant and is a permanent installation therein, the machinery may properly be considered part of the real estate. *Singer v. Redevelopment Authority of City of Oil City,* 437 Pa. 55, 261 A.2d 594 (1970). In holding that the water treatment system was an "improvement to real property," the *Gnall* court rejected the plaintiff's claim that the disparate components of the system be viewed in isolation rather than together. *Id.* at 818. Moreover, the court found that the water treatment system at issue was specifically designed to suit the particular facility involved. *Id.* at 817.

Another instructive case is *Kovach v. The Crane Company,* Nos. 82–0530–31, slip op. at 13–14 (M.D.Pa. filed May 18, 1983) where the court held that a steam boiler was an improvement to real property since it was essential to the operation of the industrial plant. Similarly, it is undisputed that the Despatch oven involved here was essential to the glass-making process and was an integral part of the Brockway plant.

Plaintiff, however, contends that the Brockway plant could function without the oven at issue and, in fact, did so immediately after the explosion. Deposition of Rick George at 64; Deposition of Gregory Allen Bushko at 34. Additionally, plaintiff contends that Brockway eventually switched to an altogether different oven system. Without commenting on the validity of these allegations our finding that the Brockway plant was operated with ovens dictates the conclusion that the ovens, collectively and individually, were essential to the operation of the plant. *Kovach,* slip op. at 14. We reach this result because at the time of the explosion in this case, Brockway could not have conducted its operations at the Washington plant without the use of its oven system, which was an integral part of the manufacturing process. This result is consistent with analogous decisions in other states. *See J.H. Westerman Co. v. Fireman's Fund Ins.,* 499 A.2d 116, 119 (D.C. App. 1985) (installation of

heating system and component switches was an improvement since it "was an integral part of the building, without which the structure could not have been used for business"); *Pacific Indemnity Co. v. Thompson-Yeager, Inc.*, 260 N.W.2d 548, 554 (Minn.1977) (furnace); *Brown v. Jersey Central Power & Light Co.*, 163 N.J.Super. 179, 195, 394 A.2d 397, 405 (1978) (central air conditioning system); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wash.2d 528, 530, 503 P.2d 108, 110 (1972) (refrigeration system deemed integral part of warehouse). *But see Condit v. Lewis Refrigeration Co.*, 101 Wash.2d 106, 111, 676 P.2d 466, 469 (1984) (freezer tunnel not integral; distinguishes *Yakima* ).

While a determination that the oven is an improvement to real property does involve some factual considerations, we believe that the improvement at issue so clearly falls within the realm of § 5536 that there exist no material factual issues. *See Anderson v. Liberty Lobby, Inc., supra; Celotex Corp. v. Catrett, supra.* Consequently, since plaintiff has presented absolutely no evidence, by way of affidavit, deposition or otherwise, which rebuts the factual assertions of the movant-defendants, the instant dispute must be resolved as a matter of law.

Further, we note that our analysis need not consider whether the oven is a "product" for purposes of the Restatement (Second) of Torts § 402A, because we believe that § 402A and 42 Pa.C.S.A. § 5536 are not mutually exclusive. In fact, the language of § 5536 is broad enough to encompass a particular "product" under § 402A which may also be an "improvement to real property." *Cf. Abdul-Warith v. Arthur McKee and Co.*, 488 F.Supp. 306, 312 (E.D. Pa.1980) (skip bridge of furnace deemed product under § 402A; however, "the terms structure and product are not necessarily mutually exclusive"). Thus, whether the oven or any of its parts would qualify as a § 402A product is irrelevant to our discussion.

For the foregoing reasons, we conclude that the Despatch oven is an "improvement to real property" pursuant to § 5536.

## IV. APPLICABILITY OF § 5536 TO DESIGNERS, MANUFACTURERS AND SUPPLIERS OF PRODUCTS AND COMPONENT PARTS

Our inquiry now turns to whether the statute of repose is applicable to all of the defendants. Obviously, § 5536 applies to Despatch, Inc., the manufacturer of the oven. *Catanzaro, supra.* On the other hand, plaintiff argues that even if Despatch is protected under § 5536, Eclipse and Honeywell are not subject to such protection since they merely marketed their parts to numerous manufacturers and did not customize their components in relation to the particular real estate or assist in the installation of the products. We disagree. Plaintiff's position was explicitly rejected by the court in *Catanzaro*, which unequivocally stated that § 5536 "extends to manufacturers who supply components which, in combination with others, become part and parcel of an 'improvement to real estate' . . . ." 339 Pa.Super. at 486, 489 A.2d at 266. *See Gnall*, 640 F.2d at 820–21 (liberal construction of § 5536 extends its protection, after passage of 12 years, to any entity that has contributed to the formation of an "improvement to real property").

In *Catanzaro*, the Pennsylvania Superior Court held that the statute applies to "any person lawfully performing or furnishing the design, planning, supervision, or observation of construction or construction of any improvement to real property." *Id.* 339 Pa.Super. at 486, 489 A.2d at 265. In support of its conclusion, the court cited *Leach v. Philadelphia Savings Fund Society*, 234 Pa.Super. 486, 340 A.2d 491 (1975), which noted that the statute immunizes from liability after 12 years "any" person performing one of the activities listed in the statute and emphasized how "[t]he word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive." *Id.* at 490–91, 340 A.2d at 493. *See Gnall, supra; Mitchell, supra. But see Kovach*, slip op. at 17–18 (restrictive interpretation of § 5536; statute held inapplicable to manufacturers of products installed as improvements to real property).

Construing § 5536 liberally, as we are bound to do, we conclude that the statute applies to designers, manufacturers and suppliers of both component parts and finished products. Our result is buttressed by two recent post-*Catanzaro* decisions of the Pennsylvania Superior Court. In *Goodrich v. Luzerne Apparel Manufacturing Corp.*, 356 Pa.Super. 148, 514 A.2d 188 (1986) the court concluded that a testing laboratory's approval of the design of an electrical panel board was equivalent to designing the panel board for purposes of the statute of repose. Likewise, in *Fetterhoff, supra,* the court held that a designer-installer of an elevator, who periodically performed maintenance and repair work thereon, was afforded the protection of § 5536. 354 Pa.Super. at 443, 512 A.2d at 33. Based on the broad construction of the language of § 5536 by Pennsylvania courts, we conclude that all three defendants in this case are afforded that statute's protection.

## V. PROGNOSTICATION OF RESULT IN THE PENNSYLVANIA SUPREME COURT

Like the Court in *Gnall,* we are obliged to predict whether the Pennsylvania Supreme Court will ultimately adopt the rationale of *Catanzaro* and its progeny. We are well aware that the Court of Appeals for the Third Circuit has cautioned its district courts that sweeping changes in "basic tort law," such as that before us here, should stem from the Pennsylvania Supreme Court and not the Superior Court. *Vargas v. Pitman Manufacturing Co.,* 675 F.2d 73, 76 (1982); *Keystone Aeronautics Corp. v. R.J. Ernstrom Corp.,* 499 F.2d 146, 147 (3d Cir.1974). However, after having extensively researched this issue, we conclude that the Pennsylvania Supreme Court would follow *Catanzaro* since the emerging trend in Pennsylvania has been to apply § 5536 broadly. As Judge Conaboy aptly stated in the *Gnall* case:

> Regarding the logic of the *Catanzaro* decision, we see it as a logical progression from the principles expressed in *Leach* and *Mitchell* and the most recent example of a trend in Pennsylvania's

courts to liberally construe the Statute of Repose to extend its protection after passage of 12 years, to any entity that has contributed to the formation of an "improvement to real estate." We are struck by the unequivocal aspect of the *Catanzaro* decision and we now predict that *Catanzaro* and not *Kovach* renders the interpretation of the Statute of Repose more likely to be adopted by the Pennsylvania Supreme Court. We believe this to be a logical prediction stemming from our responsibility, in the absence of a decision of the Pennsylvania Supreme Court, to "... consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." (emphasis ours). *See McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.1980).

*Id.* at 821 (footnote omitted).

Accordingly, since plaintiff has presented no evidence by way of affidavit or otherwise, which raises a genuine issue of material fact, summary judgment will be entered in favor of the defendants.