Mary Anne SPRINGMAN, Individually and as the Administratrix of the Estate of Melvin J. Springman, deceased, Plaintiff,

v.

WIRE MACHINERY CORPORATION OF AMERICA, et al., Defendants.

Civ. No. 86–1847.

United States District Court, M.D. Pennsylvania.

Aug. 10, 1987.

Robert B. Elion and William P. Carlucci, Fisher, Rice, Barlett, Elion & Wayne, Williamsport, Pa., for plaintiff.

Charles W. Rubendall, II and Wayne M. Pecht, Keefer, Wood, Allen and Rahal, Harrisburg, Pa., for MRC Bearings, Inc. and TRW, Inc.

Richard A. Kraemer, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for Watson Machine Co.

OPINION

MUIR, District Judge.

This case is currently on our September, 1987, trial list. Defendant Wire Machinery Corporation of America, Inc. (Wire Machinery) filed a motion for summary judgment and supporting materials on June 15, 1987. On June 25, 1987, a brief was filed along with an affidavit, several photographs, and a deposition. An opposing brief, supporting materials and affidavits were filed July 10, 1987. The matter became ripe on July 24, 1987, when a reply brief was filed.

Summary judgment is a drastic remedy and should not be granted when there is a disagreement about the facts or the proper inferences to be drawn from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982); *Ness v. Marshall*, 660 F.2d 517 (3d Cir.1980). In considering a motion for summary judgment, we must ascertain whether or not there are any genuine issues of material fact and, if none, whether or not the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. All matters must be considered in the light most favorable to the opposing party.

We begin by addressing the question of whether or not there are any genuine issues of material fact in this case. Wire Machinery filed a statement of material facts not in issue in numbered paragraphs pursuant to Local Rule 401.4 on June 15, 1987. Springman filed a counterstatement of facts not in numbered paragraphs on July 10, 1987. The statement of facts filed by Springman is not in the manner required by Local Rule 401.4. This has caused the Court some difficulty in analyzing this case. Nevertheless, after comparing the statement of facts submitted by Springman with those submitted by Wire Machinery, we are of the view that while some facts are in question, for the purposes of this motion no material facts are in issue.

It is undisputed that Melvin J. Springman died when he was struck by a bobbin ejected from equipment manufactured by Wire Machinery and located at the Bethlehem Wire Rope facility in Williamsport, Pennsylvania (Bethlehem). The piece of machinery is known as a tubular closer and is identified as No. 433. The tubular closer has been affixed to the floor of Bethlehem's plant since 1948 by anchor bolts secured in cement. No. 433 has never been moved from its original location, weighs several tons, is many feet long and is used to manufacture wire rope which is the primary function of Bethlehem.

The statement of facts presented by Springman is bolstered by the affidavits of Barry Rhody who is the current president of Bethlehem and Charles W. Snyder, a real estate broker and appraiser. These affidavits establish that in the view of these gentlemen No. 433 could be moved from the building by removing the nuts from anchor bolts and resold to perform the same function that it performs for Bethlehem for another manufacturer. They state that this would cause no damage to the building except that protruding bolts would remain after the machine was removed. Additionally, the affidavits establish that there are 7 other tubular closers in the building which perform the same or similar functions as No. 433 and that No. 433 was placed in the building long after the building was built. Mr. Rhody states that No. 433 is not vital to the operation of Bethlehem because the building contains many other pieces of machinery all of which operate independently of No. 433 and because No. 433 is unrelated to the plumbing, electrical, or heating system of the building except that it is run by electricity as are the other machines in the building.

Based on these facts we must determine whether or not Wire Machinery is entitled to a judgment as a matter of law. Wire Machinery's motion is based on Pennsylvania's Statute of Repose, 42 Pa.C.S.A. § 5536. The statute reads in pertinent part:

(a) General Rule— ... a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:

(3) Injury to the person or for wrongful death arising out of any such deficiency.

In order for Wire Machinery to come under the ambit of the statute, it must show that: (1) more than 12 years have elapsed between the completion of the improvement and the injury; (2) the allegedly defective product which caused the injury constitutes an improvement to real property; and (3) it is one of the class of persons performing or furnishing the design, planning, supervision, or observation of construction or construction of the product in question.

No party disputes that the 12-year provision of the statute is met by Wire Machinery. The applicability of the other two provisions of the statute are hotly contested.

There is little Pennsylvania law on this statute. In absence of a controlling decision of the Pennsylvania Supreme Court, we must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and other data which show how the Pennsylvania Supreme Court would probably decide the issues. *McGowan v. University of Scranton,* 759 F.2d 287, 291 (3d Cir.1985). Decisions of the Pennsylvania Superior Court are presumptive evidence but not an absolute pronouncement of state law and only serve as a guide. *National Security Corp. v. Midland Bank,* 551 F.2d 21, 30 (3d Cir.1977). With this in mind we must analyze the facts to see if the statute applies to a machine such as No. 433.

We must first determine whether No. 433 is an improvement. The statute does not define this term. The definition of improvement found in Black's Law Dictionary has been used both by this Court and the Pennsylvania Superior Court. *See Mitchell v. United Elevator Co.,* 290 Pa. Super. 476, 434 A.2d 1243 (1981); *Kovach*

*v. The Crane Company,* M.D.Pa. No. 82–0530, slip op. (May 18, 1983). (Muir, J.); *Gnall v. Illinois Water Treatment Co.,* 640 F.Supp. 815 (M.D.Pa.1986) (Conaboy, J.). As defined in Black's Law Dictionary, an improvement is

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty, or utility, or to adapt it for new or further purposes.

Under the "assembled plant doctrine" if machinery is (1) vital to the business operation of an industrial plant and is (2) a permanent installation therein, it may properly be considered an improvement to and a part of the real estate. *Singer v. Redevelopment Auth. of Oil City,* 437 Pa. 55, 261 A.2d 594 (1970); *Kovach* slip op. at 16, *Gnall,* 640 F.Supp. at 817–818. This is so regardless of the manner in which the article is attached to the realty, *Commonwealth Trust Co. v. Harkins,* 312 Pa. 402, 167 A. 278 (1933), and whether or not removal of the article will materially injure the realty, *Clayton v. Lienhard,* 312 Pa. 433, 167 A. 321 (1933). The key criterion is whether or not the owner of the realty intended that the article be a permanent accession. *Wick v. Bredin,* 189 Pa. 83, 42 A. 17 (1899).

It is disputed among the parties whether or not tubular closer No. 433 is vital to the operation of Bethlehem Steel's plant. Springman argues that No. 433 is not vital because: (1) there are 7 other similar machines and the plant could function without No. 433; (2) the machine was brought to the plant long after the plant was built and (3) it could be removed from the plant without doing any damage to the plant. The Wire Machinery Corporation argues that No. 433 is vital because: (1) it is used to manufacture wire rope which is the primary function of Bethlehem's plant (2) the machine has never been moved and (3) Bethlehem Steel has no intention ever to move it.

As we noted in *Kovach,* the critical question is the intention of Bethlehem with respect to the piece of equipment. Generally, when questions of intent are involved the issue must be determined by the jury. Nonetheless, we are of the view that while Mr. Rhody's affidavit establishes that the machine could be removed and other machines perform similar functions, it is very large, attached to the floor where it has remained for many years and provides a vital function just like the other machines in the plant. That there are several tubular closers at the plant shows that tubular closers are vital not that they are dispensable. Furthermore, it is clear to us that Bethlehem intends the machine to be a permanent accession. The machine has never been moved and is moored to the ground. We are of the view that No. 433 is an improvement. *Accord, Kovach,* slip op. (Steam boiler an improvement); *Gnall,* 640 F.Supp. 815 (tank an improvement) *Catanzaro, infra,* 339 Pa.Super. 481, 489 A.2d 262 (skydome an improvement); *see also Luzadder, infra,* 651 F.Supp. 239 at 242 (listing other examples).

It is the third part of the test, the determination as to whether Wire Machinery is among the class of persons the legislature sought to protect which is the critical issue. We addressed this issue squarely in the case of *Kovach v. The Crane Company,* M.D.Pa. No. 82–0530, slip op. (May 18, 1983). In that case, we declined to afford the protection of the Statute of Repose to the manufacturer of a steam boiler which had exploded and caused the death of two men. We were of the view that the manufacturer of a steam boiler was not a member of the class the legislature sought to protect when it enacted the statute. We arrived at this decision by reviewing the then existing cases decided by the Pennsylvania Superior Court, the plain language of the statute and the legislative history of the precursor to 42 Pa.C.S.A. § 5536. There was no legislative history for 42 Pa.C.S.A. § 5536, itself. It was our view that § 5536 was meant to protect those persons involved in the *construction* of improvements to real property. *Kovach,* slip op. at 18. We ruled that the manufacturer of the defective boiler could not be said to have constructed the boiler because

when the boiler left the control of the manufacturer, it could not yet logically be viewed as an improvement to real estate. Since our decision in *Kovach,* the Pennsylvania Superior Court has rendered a decision on this issue. That Court in *Catanzaro v. Wasco Prod., Inc.,* 339 Pa.Super. 481, 489 A.2d 262 (1985) held that the Statute of Repose includes manufacturers who had designed, planned, or constructed pieces of equipment which become improvements to property. *Id.* at 486, 489 A.2d 262. The *Catanzaro* Court relied on *Mitchell v. United Elevator Co.,* 290 Pa.Super. 476, 434 A.2d 1243 (1981) which we had distinguished in *Kovach.*

In *Mitchell,* Westinghouse Electric Company the manufacturer of an elevator which was defective was found to be within the scope of the statute of repose because an elevator system "... with all its myriad components, motors, cables, wiring and machinery" is not similar to an item which can be readily uncrated and plugged in but is instead an essential part of a building. *Mitchell,* at 488, 434 A.2d 1243. The *Catanzaro* court reached its decision by reading *Mitchell* in connection with the Pennsylvania Statutory Construction Act of 1972, 1 Pa.C.S.A. § 1928(c) which codifies a presumption favoring liberal construction of statutes with an earlier statement of that Court in *Leach v. Philadelphia Savings Fund Society,* 234 Pa.Super. 486, 340 A.2d 491 (1975). In *Leach,* the Superior Court held that the word "any" as used in the statute is "most comprehensive" to mean that the statute should be liberally construed to include manufacturers. We are of the view that the Superior Court has read too much into the statute. Other Federal Courts have, however, followed *Catanzaro.*

Judge Conaboy, in *Gnall v. Illinois Water Treatment Co.,* 640 F.Supp. 815 (M.D. Pa.1986) after a thorough analysis of our opinion in *Kovach,* and the Superior Court's opinion in *Catanzaro,* was of the view that the Supreme Court of Pennsylvania will ultimately adopt the *Catanzaro* approach rather than the *Kovach* approach. Judge Conaboy reached this decision by observing that first in the list of items we must look to in determining how the Pennsylvania Supreme Court will interpret a statute is "... relevant state precedents." *See McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir.1980). Thus, based on *Mitchell* and *Catanzaro* Judge Conaboy was of the view that the Pennsylvania Supreme Court will ultimately find that manufacturers of machinery are covered by the statute. This line of reasoning has also been followed by Chief Judge Cohill in the Western District of Pennsylvania in *Luzadder v. Despatch Oven Co.,* 651 F.Supp. 239 (W.D.Pa.1986).

Although the Superior Court has decided that manufacturers are covered by the statute, we have been cautioned by the Court of Appeals that changes in basic tort law should emanate from the Supreme Court of Pennsylvania and not the Superior Court. *See Vargas v. Pitman Mfg. Co.,* 675 F.2d 73, 76 (1982). The interpretation of the statute given by the Superior Court is clearly an extension of the law. We are of the view that the Superior Court has placed too little emphasis on the plain language of the statute and the, albeit scant, legislative history. The history reveals that the statute was passed as a result of the lobbying efforts of the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors of America and meant to protect these groups of people—not manufacturers. *See Luzadder,* 651 F.Supp. at 241; *see also Kovach,* slip op., at 15–18; *Vasquez v. Whitting Corp.,* 660 F.Supp. 685 (E.D.Pa.1987) (Cahn, J.).

In light of this and the recent opinion of Judge Cahn just cited which relied on our decision in *Kovach* we remain of the view that *Kovach* is the better analysis of the Statute of Repose and that there is a slightly better than even chance that it will be adopted by the Pennsylvania Supreme Court. We also recognize that we are endowed with dubious oracularity. We will decline to extend the protection of the Pennsylvania Statute of Repose to Wire Machinery.

An appropriate order will be entered.

## ORDER

Wire Machinery Corporation of America's motion for summary judgment filed June 15, 1987, is denied.