**Patsie Elkins BOLTON, Administratrix of the Estate of Ray Scott Jackson, a Minor, Deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. S83–0401(R).

United States District Court,
S.D. Mississippi, S.D.

March 27, 1985.

Donald C. Dornan, Jr., David Oliver, Biloxi, Miss., for plaintiff.

Stephen R. Graben, Asst. U.S. Atty., Biloxi, Miss., for defendant.

## MEMORANDUM OPINION

DAN M. RUSSELL, District Judge.

This cause has come before the Court upon the defendant's motion to dismiss for failure to state a claim upon which relief can be granted, or in the alternative, for summary judgment. The United States of America claims that assuming the allegations of the complaint to be true, it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief and, consequently, the United States of America is entitled to a dismissal of this action. The United States of America further claims, in

the alternative, that it is entitled to summary judgment against the plaintiff. The plaintiff asserts that the burden is on the movant to show that the complaint fails to state a claim upon which relief can be granted and that there is no genuine issue as to any material fact and that she is entitled to judgment as a matter of law. The plaintiff further asserts that because the agents of the United States breached the applicable standards of medical care in this case and because related factual issues require resolution by a trier of fact, the Government's motion is without merit and should be denied. The parties have submitted extensive memoranda in support of and in opposition to the motion. In addition, both parties have attached as exhibits to their briefs excerpts of depositions which are relevant to this cause.

▉ It is entirely within the discretion of the Court whether or not to accept material outside the pleadings.[1] Fed.R.Civ.P. 12(b)(6); *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413 (5th Cir.1980). However, should the Court decide to accept this extraneous material, the Court must then treat the matter as one for summary judgment and follow the procedures set out in Rule 56. Fed.R.Civ.P. (12)(b); *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972); *See also Tuley v. Heyd*, 482 F.2d 590, 593 (5th Cir.1973); *Arrington v. City of Fairfield*, 414 F.2d 687, 692 (5th Cir.1969). Therefore, since the submitted material is comprehensive enough to enable this Court to make a complete and rational determination, the motion to dismiss will be directed as one for summary judgment.

▉ Under Rule 56 summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The

Court is mindful of the fact that summary judgment is not only a device for "just speedy and inexpensive" resolution, *Albatross Shipping Corp. v. Stewart*, 326 F.2d 208, 211 (5th Cir.1964), but also is "a lethal weapon" capable of "overkill in its use." *Brunswick v. Vineberg*, 370 F.2d 605, 612 (5th Cir.1967). Thus, it is well established in this circuit that the summary judgment may be granted only with extreme caution and only when there is no genuine issue as to a material fact. *Scott v. Dollahite*, 54 F.R.D. 430 (N.D.Miss.1972). It is also well established that the burden is upon the moving party to show that no genuine issue of material fact exists keeping in mind all doubts are to be resolved against the moving party. *Powers v. Nassau Development Corp.*, 753 F.2d 457 (5th Cir.1985); *Hall v. Diamond M. Company*, 732 F.2d 1246 (5th Cir.1984); *AT & T Co. v. Delta Communications Corp.*, 590 F.2d 100 (5th Cir.), *cert. denied*, 444 U.S. 926, 100 S.Ct. 265, 62 L.Ed.2d 182 (1979).

The following facts appear without any material dispute.

1. Erwin E. Jackson enlisted in the United States Air Force on July 14, 1968, in Harrison County, Mississippi and remained in the Air Force for approximately fourteen years. Deposition of Erwin E. Jackson, pp. 9–11.

2. On March 8, 1970, the plaintiff, Patsie Elkins Bolton, married Erwin Jackson. On May 28, 1971, the plaintiff gave birth to Alecia Jean Jackson. On or about June, 1973, the plaintiff and Erwin Jackson were divorced in Biloxi, Mississippi. The plaintiff received custody of the child, Erwin Jackson receiving visitation privileges. On March 16, 1975, the plaintiff remarried Mr. Jackson. On January 26, 1976, Ray Scott Jackson, the Jacksons' second child, was born in Montgomery, Alabama. In August of 1979, the Jacksons were again divorced. As per the divorce agreement, Mr. Jackson received custody of the two children. Deposition of Patsie Elkins Bolton, pp. 11–17.

---

**1.** For purposes of ruling on the Government's motion *sub judice,* the Court accepts the well-pleaded allegations of the plaintiff's complaint as true. *Sheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

3. On June 17, 1981, Erwin Jackson married Pamela Arlene Jackson. Deposition of Erwin E. Jackson, p. 6.

4. Erwin E. Jackson received his basic training in the United States Air Force at Lackland Air Force Base in Texas. Following basic training, he was stationed at Whiteman Air Force Base in Missouri. This was followed by a tour of duty in Vietnam. Upon his return from Vietnam, he was assigned to Keesler Air Force Base, Mississippi. He again saw a tour of duty in Vietnam followed by an assignment to King Solomon Air Force Base in Alaska. This assignment was followed by an assignment to Maxwell Air Force Base near Montgomery, Alabama. Erwin E. Jackson concluded his military career at Keesler Air Force Base. Erwin E. Jackson received the rank of Tech/Sergeant (TSgt) in his tour of duty. His current status with the Air Force is that he is on a temporary disability retired list. Deposition of Erwin E. Jackson, pp. 9–11.

5. Erwin Jackson was admitted to Maxwell Air Force Hospital on October 22, 1979. The reason for his admission was that he had been demonstrating abnormal behavior during the course of that day. He had walked out of his Leadership Management Instructor Class several times on that morning and he exhibited behaviors that suggested that he was anxious, restless and confused. His conversation during the class session was hard to follow and his ideas were loosely associated with each other. The observing doctor, Dr. Rajadorai Calnaido, indicated that the patient was confused, suspicious, excited, and was expressing homicidal ideation. In developing the history of TSgt. Jackson, Dr. Calnaido stated that Jackson had admitted that he had been eating less during the last few days, and that on the morning of the day he was admitted, he had killed a cat by shooting it with an air rifle between the eyes. Jackson also stated that he had locked himself in the basement of his home at approximately 3:00 AM and pounded against the door and screamed until his eight-year old daughter came and let him out. The provisional diagnosis at Maxwell Air Force Hospital was acute schizophrenic episode. Deposition of Dr. Rajadorai Calnaido, pp. 14–16.

6. On or about October 26, 1979, Jackson was admitted to Eglin Air Force Base Hospital. He was confined at Eglin from October 26, 1979 to November 17, 1979 for treatment of his mental problems. Dr. Calnaido downgraded Jackson's diagnosis from schizophrenia to transient situational disturbance and discharged him to return to duty at Maxwell on November 17, 1979. At that time, it was recommended that Jackson not participate in the leadership management course for at least one year and that he receive follow-up mental health treatment at Maxwell. In early 1980, TSgt. Jackson was reassigned to Keesler Air Force Base. Deposition of Dr. Rajadorai Calnaido, pp. 32–35; 39.

7. TSgt. Jackson was not seen at the Keesler Air Force Base Mental Health Clinic on any occasion after his arrival in early 1980. On October 28, 1981, TSgt. Jackson came to the Emergency Room at the Keesler Air Force Base Hospital requesting an evaluation of his back pain which he stated had lasted two and one-half years. He was referred to the Primary Care Clinic. On October 29, 1981, TSgt. Jackson was seen and examined in the Primary Care Clinic complaining of back and neck pain lasting three months. TSgt. Jackson was prescribed a muscle relaxant and an analgesic and advised to return to the clinic as needed. Deposition of Dr. Joe A. Jackson, pp. 49–50.

8. On the morning of November 1, 1981, TSgt. Jackson stabbed his five-year old son, Ray Scott Jackson, in the back with a knife at his home. TSgt. Jackson and his second wife, Pamela Jackson, transferred Ray Scott Jackson to Memorial Hospital at Gulfport, Mississippi. During the course of Ray Scott Jackson's treatment in the Emergency Room, TSgt. Jackson killed Ray Scott Jackson by hitting him in the head with a metal stool. Deposition of Tim Moore, pp. 12–15; Deposition of Erwin E. Jackson, pp. 54–62.

## THE *FERES* DOCTRINE

The plaintiff has brought this suit pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 2671 *et seq.* alleging *inter alia* acts of malpractice were committed in conjunction with the treatment of Erwin E. Jackson, causally breaching a duty owed to the plaintiff; negligence in failing to diagnose, confine and/or refer TSgt. Jackson in light of his mental problems; and negligence in the Government's failure to provide the reasonable and proper medical care, skill and treatment accepted and proper in the circumstances.

■ Federal courts are without subject matter jurisdiction to hear suits against the United States unless there has been a waiver of sovereign immunity. In 1946, Congress enacted the Federal Torts Claims Act which constituted a limited waiver of sovereign immunity for suits against the United States in tort. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976).

In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held that "the Government is not liable under the Federal Torts Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159. The Court held there could be no recovery for claims under the FTCA for the death of an Army officer allegedly caused by fire in the barracks where he was quartered, or for death or injury of members of the Armed Forces caused by the medical malpractice of an Army physician. Subsequently, in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Court reaffirmed the *Feres* reasoning. In *Stencel,* a National Guardsman brought an action against the United States and the manufacturer of certain aviation equipment which caused his injuries. The manufacturer cross-claimed for indemnity from the United States. The National Guardsman had already been awarded a government pension for the injuries he received. Because the serviceman's claim was incident to military service, summary judgment for the United States was affirmed.

The tragic case before the Court presents facts which, of course, are of first impression. However, the law as relates to the facts *sub judice* involves the application of well-settled legal principles. The issue before the Court is whether the *Feres* doctrine operates to bar claims which are not the serviceman's, but are claims which belong to his ex-wife as administratrix of the estate of the deceased son, Ray Scott Jackson.

■ After exhaustive research of the issue, the Court has found definitive the case law which holds that the *Feres* doctrine bars recovery by family members where the cause of action is ancillary or derivative to the serviceman's action for his own injury.[2] Of prime example is the *Feres* decision. In *Feres,* two of the three cases considered and barred were brought by the widows of servicemen who died while on active duty. Furthermore, the *Feres* doctrine has barred actions by family members for their alleged injuries which are the result of, or ancillary to any injury suffered by the serviceman. *Hinkie v. United States,* 524 F.Supp. 277 (E.D.PA 1981); *rev'd* 715 F.2d 96 (3rd Cir.1983); *De Font v. United States,* 453 F.2d 1239 (1st Cir. 1972), *cert. denied,* 407 U.S. 910, 92 S.Ct.

---

2. The Court is aware of the line of cases since *Feres* which allowed recovery by the serviceman's family members. Various federal courts have allowed recovery against the United States under the FTCA where the injury to the family member is directly caused by the United States, is independent of any injury to the serviceman, and is not related to any combatant activities. *See e.g. Costley v. United States,* 181 F.2d 723 (5th Cir.1950); *Grigalauskas v. United States,* 103 F.Supp. 543 (D.Mass.1951), *aff'd,* 195 F.2d 494 (1st Cir.1952); *Fournier v. United States,* 220 F.Supp. 752 (S.D.Miss.1963); *Herring v. United States,* 98 F.Supp. 69 (D.Colo.1951); *Messer v. United States,* 95 F.Supp. 512 (D.Fla.1951); *Wilscam v. United States,* 76 F.Supp. 581 (D.Hawaii 1948). The case before the Court clearly involves an injury to a family member which is not independent of any injury to the serviceman.

2436, 32 L.Ed.2d 684 (1972) (serviceman's wife's action for loss of companionship, loss of husband's income and mental anguish, child's action for loss of companionship); *Harrison v. United States*, 479 F.Supp. 529 (D.Conn.1979), *aff'd without opinion*, 622 F.2d 573 (2d Cir.1980), *cert. denied*, 449 U.S. 828, 100 S.Ct. 93, 66 L.Ed.2d 32 (1980) (serviceman's wife's action for loss of consortium); *Wisniewski v. United States*, 416 F.Supp. 599 (E.D.Wis. 1976) (serviceman's wife's action for damages for familial and marital disharmony).

Federal courts have also applied *Feres* where the family member has suffered a direct physical injury which was allegedly caused by some negligent act or omission on the part of the United States with regard to the serviceman. *Hinkie, supra; Harten v. Coons*, 502 F.2d 1363 (10th Cir. 1974), *cert. denied*, 420 U.S. 963, 95 S.Ct. 1354, 43 L.Ed.2d 441 (1975) (serviceman's wife's action for costs of raising and maintaining a child to the age of eighteen following negligent vasectomy operation performed upon a serviceman); *Monaco v. United States*, 661 F.2d 129 (9th Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982) (serviceman's child's action for congenital birth defects caused by father's exposure to radiation); *Mondelli v. United States*, 711 F.2d 567 (3rd Cir. 1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1272, 79 L.Ed.2d 677 (1984) (serviceman's child's action for genetic injuries caused by father's exposure to radiation); *Gaspard v. United States*, 713 F.2d 1097 (5th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984) (servicemen's wives' claims for loss of consortium and emotional distress).

 The case at bar is unique in that the plaintiff is now, and was at the time of the tragedy, divorced from her serviceman husband Erwin Jackson. However, the plaintiff cannot escape the genesis of her claim. Erwin Jackson, at the time of the occurrence, was on active duty and had been

continually in the service for some thirteen years. The plaintiff's claims occurred only because of the alleged injuries to Erwin Jackson. Her claim is that the negligent acts and omissions by the United States with regard to Erwin Jackson caused injury to her in the death of her son, Ray Scott Jackson. This is clearly a derivative tort.[3] Furthermore, to allow the circumvention of the *Feres* doctrine by relying upon the divorce between the plaintiff and her serviceman husband could produce inequitable and irrational results.

In conclusion, the Court is well aware of the harsh results of this decision. While it seems unfair to deny the ex-spouse of any means of compensation for the "incidental consequences of actions attributable to her husband's military service" which resulted in the loss of her son, because of controlling, unwaivering precedent, the Court must dismiss the plaintiff's action, with prejudice. *Hinkie, supra*, 715 F.2d at 99. The Court grants the defendant's motion to dismiss which was converted by the Court into one for summary judgment.

An Order in accordance with this Opinion shall be provided as set forth in the Local Rules.

---

**3.** The plaintiff's argument that she is not a member of the Armed Forces and that *Feres* does not apply to her is adequately discussed and dispelled in *Monaco v. United States,* 661 F.2d 129, 133 (9th Cir.1981).