514 So.2d 1227 (1987)
Terry L. SMITH & Ginger Smith
v.
FLUOR CORPORATION and
James Hall
v.
FLUOR CORPORATION.
Nos. 57159, 57184.
Supreme Court of Mississippi.
November 4, 1987.
*1228 Patrick H. Zachary, Zachary & Zachary, Hattiesburg, Richard B. Graves, II, Graves, Riley & Meadows, Gulfport, for appellant.
Lawrence C. Gunn, Jr., Hattiesburg, for appellee.
John E. Milner, Christopher A. Shapley, Brunini, Grantham, Grower & Hewes, Jackson, for intervenors.
Before ROY NOBLE LEE, PRATHER and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
James Hall filed suit in the Circuit Court of Lamar County, Mississippi, against Fluor Corporation, et al., for personal injuries sustained in an explosion at the Amerada Hess refinery on December 26, 1983. Terry Smith and Ginger Smith, his wife, also filed suit against Fluor Corporation, et al., for injuries sustained by Terry Smith in the explosion. The suits were consolidated and the lower court granted summary judgment in favor of Fluor Corporation, on the ground that the actions were barred under Mississippi Code Annotated § 15-1-41 (1972). Hall and the Smiths have appealed here, assigning three errors in the trial below, viz:
I. THE LOWER COURT ERRED IN FINDING THAT MCA § 15-1-41 BARRED APPELLANTS' CLAIM.
II. THE LOWER COURT ERRED IN FINDING THAT THE LEGISLATIVE SHORTENING OF THE STATUTE OF LIMITATIONS WITHIN MCA § 15-1-41 APPLIED HEREIN.
III. THE LOWER COURT ERRED IN FINDING THAT MCA § 15-1-41 BARRED APPELLANTS' CLAIM BECAUSE THAT STATUTE IS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES.
The complaints and the facts in the cases are identical. On December 26, 1983, the appellants were injured in a fire at the Black Creek Petroleum Refinery owned by their employer, Amerada Hess Corporation. They charge that Fluor Corporation "negligently and defectly designed, manufactured and installed the pre-heater/heat exchanger unit 6E-10 and associated valves and piping... ." Fluor's motion for summary judgment contended (1) the ten-year statute of limitations pertaining to improvements to real property bars the suits, and (2) the 6E-10 pre-heater had been substantially altered and was negligently misused by Amerada Hess since Fluor installed it in the 1950s, relieving Fluor from any liability. The lower court's summary judgment was based solely upon the statute of limitations issue.
The facts are uncontradicted and admitted by the parties. Fluor Corporation built the Black Creek refinery for Pontiac Eastern Corporation in the late 1950s, and Pontiac *1229 Eastern accepted the plant prior to February 18, 1958. In 1971, Amerada Hess purchased the plant from Pontiac Eastern.
Fluor Corporation has not been back on the premises since 1958, nor has it had anything to do with the refinery. Fluor has never given any advice in the operation, modification and maintenance of the refinery since delivering it to Pontiac Eastern Corporation in 1958. In 1964, Pontiac Eastern modified the 6E-10 heat exchanger by increasing its capacity by fifty percent (50%) adding a third set of fin tubes and lengthening the inlet header. The inlet header is the section of pipe which burst.
The record indicates how that portion of the refinery operates where the explosion occurred. A hydrocarbon stream flows through a 6-inch pipe into the 6E-10 heat generator, which is a metal cylindrical vessel approximately 22 feet long. Hydrocarbon flows through a number of small tubes inserted lengthwise through the vessel and then into another portion of the plant known as the deisobutanizer tower (DIB). At the point where the hydrocarbon enters the heat exchanger, there is a large 6-inch pipe known as the inlet manifold. A valve is situated in the pipe before the gas stream enters the inlet manifold so that the flow of gas to the heat exchanger can be cut off. If a fissure occurs, the operator should open a bypass valve above the heat exchanger to allow the gas to flow around the heat exchanger and directly to the DIB. On the outlet side of the heat exchanger is another valve, the outlet valve, which likewise should be closed if the unit is bypassed in order that the heat exchanger would be closed at both ends and gas would not back up into the heat exchanger while it is bypassed.
As stated, Pontiac Eastern enlarged the capacity of the heat exchanger by adding an additional set of tubes in 1964, seven (7) years before Hess bought the refinery. The inlet manifold had to be lengthened and a new section of 6-inch pipe was welded into the end of it. Also, a drain valve was added at the end to drain water which might condense from the refining process and collect in the inlet manifold.
At the time of the accident in question, the 6E-10 heat exchanger had been bypassed. Hess had not used it for several years, and gas was flowing directly from previous parts of the refinery straight into the DIB without going through the heat exchanger. The inlet valve was closed so the gas could not enter the heat exchanger, but the bypass valve was open.
The outlet valve to the heat exchanger also was left open. The process superintendent for Hess admitted that it should have been closed. The outlet valve having been left open, it allowed hydrocarbons to pass into the pre-heater, though they were not being circulated as part of the normal gas flow. This allowed water vapor in the gas stream to condense and collect in the lowest portion of the pre-heater, which was the inlet manifold. During abnormally cold weather in December, 1983, water collected in the manifold, was not drained, and froze, bursting the pipe. When it thawed on December 26, a cloud of hydrocarbons escaped and was ignited, causing the explosion.

I.

THE LOWER COURT ERRED IN FINDING THAT MISSISSIPPI CODE ANNOTATED § 15-1-41 BARRED APPELLANTS' CLAIM.
Under the contention that the lower court erred in finding that Mississippi Code Annotated § 15-1-41 (1972) barred their claim, the appellants argue that the 6E-10 heat exchanger is an appliance or product rather than improvement to real property, and, therefore, MCA § 15-1-41 does not bar their suits. They also argue that the question, i.e., whether the 6E-10 unit is an improvement to real property within the terms of the statute, is a question for the jury, rather than for disposition on summary judgment.
The appellee contends that a preheater unit, such as the 6E-10 heat exchanger, is part of the petroleum refinery and the many miles of pipelines therein. Further, *1230 appellee contends that the heat exchanger cannot reasonably be considered a separate appliance, which would avoid the limitations of MCA § 15-1-41. That section, in pertinent part, provides:
No action may be brought to recover damages for injury to property, real or personal, or for any injury to the person, arising out of any deficiency in the design, planning, supervision, or observation of construction, or construction of an improvement to real property.

The statute does not define "improvement to real property," and a definition of the phrase must follow the plain and ordinary meaning of the terms within the statute. Roberts v. Miss. Republican Party State Exec. Committee, 465 So.2d 1050 (Miss. 1985); Pearl River Valley Water Supply Dist. v. Hinds County, 445 So.2d 1330 (Miss. 1984).
Statutes analogous to MCA § 15-1-41 have been enacted in a majority of the states. Decisions construing those statutes indicate that "improvement to real property" covers a wide range of structures and/or components thereof. See, e.g.: Adair v. Koppers Co., Inc., 541 F. Supp. 1120 (N.D.Ohio 1982) (coal-handling conveyor was improvement); Keeler v. Commonwealth, Dept. of Transportation, 56 Pa.Cmwlth. 236, 424 A.2d 614 (1981) (guardrails, signs and lights on highway are improvements); McClanahan v. American Gilsonite Co., 494 F. Supp. 1334 (D.C.Colo. 1980) (surge tank in oil refinery an "improvement to real property"); Pacific Indemnity Co. v. Thompson-Yaeger, Inc., 260 N.W.2d 548 (Minn. 1977) (furnace installed in store an "improvement"); Reeves v. Ille Electric Co., 170 Mont. 104, 551 P.2d 647 (1976) (whirlpool bath in field house was improvement); Cherokee Carpet Mills, Inc. v. Manly Jail Works, Inc., 257 Ark. 1041, 521 S.W.2d 528 (1975) (storage tank in carpet plant an improvement). Moreover, it is apparent that an object need not be a "fixture" to be an improvement to real property. Luzadder v. Despatch Oven Co., 651 F. Supp. 239 (W.D.Pa. 1986); Gnall v. Illinois Water Treatment Co., 640 F. Supp. 815 (M.D.Pa. 1986).
Other jurisdictions have not adopted uniform set of factors or standards to identify an improvement, but have considered more than just a component's mode of attachment to the realty or particular facility involved. See Luzadder, supra; Adair, supra. The appellants emphasize, in their argument, that the 6E-10 heat exchanger is an appliance or product rather than improvement to real property, and cite (1) its easy removability, and (2) its "passive state" at the time of the accident. However, it is uncontradicted that the heat exchanger was interconnected with other parts of the machinery and equipment of the refinery and that it was so interconnected at the time of construction and up to the accident and, therefore, was a part of the refinery machinery.
In Cherokee Carpet Mills, supra, the Arkansas Court, in construing an analogous Arkansas statute and determining that the action therein was barred by such statute, stated:
"[T]he tendency of modern decisions, both English and American, is against the common-law doctrine that mode of annexation is the criterion, whether slight and temporary, or immovable and permanent, and in favor of declaring all things to be fixtures which are attached to the realty with a view to the purposes for which it is held or employed." Appellant does not contend that its entire installation of machinery and equipment was not "an improvement to real property" and when we consider that the tank in question was put into position and interconnected with other parts of the machinery and equipment, we can think of no fact situation that would differentiate the design and fabrication of the tank from the design and installation of the other machinery and equipment for purposes of preventing the statutory bar of Ark.Stat.Ann. § 37-237 (Supp. 1973), supra.

521 S.W.2d at 530.
We are of the opinion that the "improvement," the basis of this case, falls within the statutory language and is within the statute. Although factual considerations *1231 may be involved in determining whether an article of property is an "improvement to real property," on the basis of the undisputed facts, they do not constitute a genuine issue of material fact which would preclude summary judgment. See Luzadder, supra; Jones v. Ohio Building Co., 4 Ohio Misc.2d 10, 447 N.E.2d 776 (Ohio Comm.Pl. 1982); and Keeler, supra.
Assigned Error I is rejected.

II.

THE LOWER COURT ERRED IN FINDING THAT THE LEGISLATIVE SHORTENING OF THE STATUTE OF LIMITATIONS WITHIN MCA § 15-1-41 APPLIED HEREIN.
Under assigned Error II, appellants claim (1) that MCA § 15-1-41 applies only to patent deficiencies in the design, planning, supervision or observation of construction or construction of an improvement to real property and, since the explosion involved a latent defect, the statute should not apply; and (2) that the state legislature cannot shorten the limitation period, as in MCA § 15-1-41, because it has the effect of barring causes of action before they accrue.
In Deville Furniture Co. v. Jesco, Inc., 423 So.2d 1337 (Miss. 1982), the United States Court of Appeals for the Fifth Circuit certified a state law question arising under the statute, in an action involving a construction contract. In Deville, the Court stated:
Before ... [MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916)], courts had denied recovery to a third party against architects, builders and other persons involved in the design and supervision of the construction of such structures for injuries sustained as a result of any defective or unsafe conditions in such structures. The denial was based on the privity of contract doctrine. However, in Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 164 N.Y.S.2d 699, 143 N.E.2d 895 (N.Y. 1957), the "no privity of contract" defense of an architect was found untenable. This gave raise to architects and builders being held liable in some states to parties who were injured as a result of defective or unsafe conditions in structures designed and erected by them. The expanded liability of architects and engineers to third parties was compounded by the fact that the statutes of limitation afforded little or no protection because the limitation commenced on the date of the injury notwithstanding the fact that such injury might have occurred many years after the structure was completed and occupied by the owner.
423 So.2d at 1337.
Section 15-1-41, as originally enacted, applied only to patent deficiencies in the design and construction of improvements to real property and did not apply to latent deficiencies in such design and construction. Subsequent to this Court's decision in M.T. Reed Construction Co. v. Jackson Plating Co., 222 So.2d 838 (Miss. 1969), the legislature amended § 15-1-41 in 1972 to state the following:
No action may be brought to recover damages for injury to property, real or personal, or for any injury to the person arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property.
The 1972 amendment obviously applied the statute not only to actions arising out of any patent deficiency, but to actions arising out of any deficiency in the design and construction of improvements to real property. Deville, supra, at 1341, stated: "The statute, as amended, is plain and unambiguous and applies whether the alleged deficiencies are patent or latent."
Appellants further argue that the effect of MCA § 15-1-41 is to preempt their causes of action against appellee before such causes of action have arisen. This contention was answered in Anderson v. Fred Wagner, 402 So.2d 320 (Miss. 1981), where the Court upheld the constitutionality of § 15-1-41, stating:
Clearly, there is no vested right in any remedy for torts yet to happen, and except as to vested rights, the state legislature *1232 has full power to change or abolish existing common-law remedies and methods of procedures.
402 So.2d at 324. See also Walters v. Blackledge, 220 Miss. 485, 71 So.2d 433, 446 (1954).
The Anderson Court further stated:
It has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purposes of protecting a recognized public interest. It is in the interest of the public that there be a definite end to the possibility of future litigation resulting from past actions. It is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation.
Anderson, supra, at 322, quoting Josephs v. Burns, 260 Or. 493, 491 P.2d 203, 207-8 (1971).
The assigned Error II is rejected.

III.

THE LOWER COURT ERRED IN FINDING THAT MCA § 15-1-41 BARRED APPELLANTS' CLAIM BECAUSE THAT STATUTE IS IN VIOLATION OF THE FOURTEENTH AMENDMENT OF THE CONSTITUTION OF THE UNITED STATES.
Appellants contend last that the lower court erred in finding that MCA § 15-1-41 barred appellants' claim because the statute is in violation of the Fourteenth Amendment of the United States Constitution. They argue that the statute violates the equal protection guarantee of the Fourteenth Amendment because an arbitrary and capricious distinction is made between the affected class of plaintiffs in this statute. The objectionable part of the section sets out: "This limitation shall not apply to actions for wrongful death."
The appellants did not attack the constitutionality of MCA § 15-1-41 in the lower court, nor did they properly raise the issue in order to present it to this Court for decision. The appellants filed a response to appellee's motion for summary judgment, and made no reference therein to the constitutionality of the statute. The law has been well settled that the constitutionality of a statute will not be considered unless the point is specifically pleaded. Witt v. Mitchell, 437 So.2d 63 (Miss. 1983); Estate of Miller v. Miller, 409 So.2d 715 (Miss. 1982).
We are of the opinion that the constitutional issue is not properly before the Court, and we decline to consider same.
Assigned Error III is rejected.
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.