Herbert **THEUNISSEN, Jr., Plaintiff,**

v.

**GSI GROUP, Previously Known as Grain Systems, Inc., Defendant.**

**Civil Action No. 4:98cv212–D–A**

United States District Court, N.D. Mississippi, Greenville Division.

July 10, 2000.

---

John H. Daniels, III, Dyer, Dyer, Dyer & Jones, Greenville, MS, for Plaintiff.

Edwin William Tindall, Lake Tindall, LLP, Greenville, MS, for Defendant.

## OPINION

DAVIDSON, District Judge.

Before the court is the motion of Defendant GSI Group for dismissal pursuant to Rule 12(b)(6), or alternatively, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Upon due consideration, the court finds that the motion should be granted.

■ The parties have submitted extensive memoranda in support of and in opposition to the instant motion. In addition, both parties have attached as exhibits to their briefs excerpts from depositions and extraneous materials relevant to this cause. It is entirely within the discretion of the court to accept material outside the pleadings when ruling on a motion to dismiss and, therefore, convert the motion into one for summary judgment. *Ware v. Associated Milk Producers, Inc.*, 614 F.2d 413 (5th Cir.1980); *Bolton v. United States*, 604 F.Supp. 1219, 1220 (S.D.Miss. 1985). Should the court decide to accept the extraneous material, it must then treat the matter as one for summary judgment. *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972). Thus, because the submitted material is comprehensive enough to enable the court to make a complete and rational determination, the motion to dismiss shall be converted to one for summary judgment.

### Factual Background [1]

Herbert Theunissen originally filed this cause of action on September 25, 1998, in

---

1. In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the evidence of the nonmovant is to be believed, and all justifiable inferences are

the Circuit Court of Washington County, Mississippi, against Defendant GSI Group (GSI) alleging claims of strict liability in tort, breach of warranty, and negligence as the result of an injury he sustained on August 17, 1996. GSI filed a notice of removal in this court on October 28, 1998, on the basis of diversity of citizenship, 28 U.S.C. § 1332. Much of the factual detail surrounding the Plaintiff's claims is not crucial to the disposition of the instant motion, but will be summarized for convenience.

Plaintiff's claims arise out of an injury he sustained while employed as a farm laborer by Theunissen Farm Partnership in Washington County, Mississippi. While removing grain from a grain bin located on the farm, Plaintiff's left foot became entangled in an unguarded auger located under the floor of the bin. The auger caused significant injury to Plaintiff's foot and as a result, he underwent a below-the-knee amputation.

The grain bin structure was originally erected in 1990 by Lowry Storage Systems, Inc., a Mississippi corporation engaged in the business of building grain bins on a turn-key basis. In June 1990, Lowry contracted with Tommy Newton Farms, predecessor in interest to Theunissen Farm Partnership, for construction of a twenty-seven foot grain storage bin on lands operated by Tommy Newton Farms. GSI, through its predecessor corporation, Grain Systems, Inc., designed and manufactured the grain bin structure sold to Lowry for the construction contract with Tommy Newton Farms. Final payment for the grain bin was made by Tommy Newton Farms on or about September 11, 1990.

Plaintiff has alleged three separate counts: strict liability, breach of warranty, and negligence. As to the first count, Plaintiff contends that GSI was the manufacturer, seller, contractor, and/or installer of the grain bin at issue, including the component parts which caused Plaintiff's injury, and that the materials were defective as manufactured or designed. Plaintiff's second count, for breach of implied warranty, alleges that the materials provided by GSI did not conform to express or implied warranties of merchantability. Finally, count three alleges negligent design, construction, selection and/or assembly of the grain bin and insufficient warnings or failure on the part of GSI to guard against injury by the auger.

### Discussion

#### A. Summary Judgment Standard

On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) ("The burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case."). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. That burden is not discharged by "mere allegations or denials." Fed. R.Civ.P. 56(e). All legitimate factual inferences must be made in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Before finding that

to be drawn in his favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The court's factual summary is so drafted.

no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### B. *Strict Liability Claim*

With respect to Plaintiff's strict liability claim, GSI argues that the claim is barred by Mississippi Code Annotated § 15-1-41, which provides a six (6) year limitations period. Plaintiff contends that GSI waived the affirmative statute of limitations defense by failing to raise it in its Answer to the Complaint as required by Rule 8(c) of the Federal Rules of Civil Procedure. The court will first address the issue of waiver.

### 1. *Waiver of Affirmative Defense*

■ Rule 8(c) of the Federal Rules of Civil Procedure provides: "In pleading to a preceding pleading, a party shall set forth affirmatively ... statute of limitations...." Rule 8(e) provides "(1) each averment of a pleading shall be simple, concise, and direct. No technical forms of pleadings or motions are required." The affirmative defense pleading requirement in Rule 8(c) has been generally interpreted under the same liberal standards as those for a complaint. *Marine Overseas Servs., Inc. v. Crossocean Shipping, Inc.*, 791 F.2d 1227, 1233 (5th Cir.1986).

■ In determining whether a party has waived an affirmative defense, the Fifth Circuit in *Lucas v. United States*, 807 F.2d 414, 417–18 (5th Cir.1986) instructed:

> Where the matter is raised in the trial court in a manner that does not result in unfair surprise, however, technical failure to comply precisely with Rule 8(c) is not fatal. That is, the defendant does not waive an affirmative defense if "he raised the issue at a pragmatically sufficient time, and the [plaintiff] was not prejudiced in its ability to respond."

*Id.* at 417–18 (internal citations omitted). "Central to requiring the pleading of affirmative defenses is the prevention of unfair surprise." *Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir.1987). Thus, when a plaintiff can adequately confront and defend against an affirmative defense, there is no undue prejudice. *See Bonti v. Ford Motor Co.*, 898 F.Supp. 391, 395 (S.D.Miss.1995) (finding no waiver where defendant presented issue of statute of limitations well before trial and plaintiff fully responded to summary judgment motion grounded on that issue); *but see Stephens v. C.I.T. Group/Equip. Fin., Inc.*, 955 F.2d 1023, 1025–26 (5th Cir.1992) (finding waiver where defendant failed to mention statute of limitations in its answer, in pretrial order, during trial, in post-trial motions, or in original appellate brief).

■ In the case *sub judice*, the Defendant has presented the statute of limitations issue by way of summary judgment before the scheduled trial of this cause. Moreover, Plaintiff has fully responded to Defendant's motion on that issue. Nothing before the court suggests that Plaintiff will be or has been prejudiced by confronting and defending against the affirmative defense. Based on the foregoing, the court is of the opinion that the Defendant raised the defense at a pragmatically sufficient time to allow the Plaintiff to respond without prejudice.

### 2. *Statute of Repose*

■ Although Defendant refers to Mississippi Code Annotated § 15-1-41 as a statute of limitations, it is rather a statute of repose. A statute of repose bars actions "after a period of time beginning with the act of an alleged wrongdoer unrelated to the date of injury." *Stephens v. St. Regis Pulp & Paper Co.*, 863 F.Supp. 341, 343 (S.D.Miss.1994) (quoting *Rector v. Mississippi State Highway Comm'n*, 623 So.2d 975, 977 (Miss.1993)). Section 15-1-41, which establishes a six-year limitations

period for actions arising from construction deficiencies, provides:

No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property ... against any person, firm or corporation performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof.

Plaintiff contends that section 15–1–41 cannot support a summary judgment in GSI's favor because the grain bin structure is not an improvement to real property, and because the statute does not protect the Defendant, as an alleged manufacturer of mass-manufactured products, from Plaintiff's strict liability claim. Plaintiff also suggests that the issue of whether the grain bin is an improvement to real property, within the terms of the statute, is a question for the jury, rather than for disposition on summary judgment.

### a. *Improvement to Real Property*

The Mississippi Supreme Court has utilized a broad definition for determining whether an improvement to real property is an improvement of the kind contemplated by section 15–1–41. *See Smith v. Fluor Corp.*, 514 So.2d 1227, 1230 (Miss.1987). Generally, determining what constitutes an improvement to real property has not been a function of applying uniform factors or standards. Rather, because the statute does not define "improvement to real property," Mississippi courts and others interpreting Mississippi law have instructed that the term must be given its customary meaning. *Fluor Corp.*, 514 So.2d at 1230 (declining to adopt rigid factor or test);

*Collins v. Trinity Indus., Inc.*, 861 F.2d 1364, 1365 (5th Cir.1988).

Decisions construing section 15–1–41 indicate that an improvement to real property covers a wide range of structures and/or components thereof. *See Trust Co. Bank v. United States Gypsum Co.*, 950 F.2d 1144, 1152 (5th Cir.1992) (fireproofing materials are improvement to real property); *Wolfe v. Dal–Tile Corp.*, 876 F.Supp. 116, 118 (S.D.Miss.1995) (tile floor was improvement); *Collins v. Trinity Indus., Inc.*, 671 F.Supp. 449, 454 (S.D.Miss.1987) (caged ladder was improvement to real property); *Fluor Corp.*, 514 So.2d at 1230–31 (heat exchanger was improvement).

Black's Law Dictionary defines "improvement" as:

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty, or utility or to adapt it for new or further purposes.

Black's Law Dictionary 757 (6th ed.1990). In *Collins v. Trinity Industries, Inc.*, 861 F.2d 1364, 1365 (5th Cir.1988), the Fifth Circuit, in construing Mississippi law, stated that the term "improvement" generally refers to "a permanent addition that increases the value of the property and makes it more useful."

■ In the case at bar, the twenty-seven foot grain bin structure was affixed to a concrete foundation, which was itself affixed to the farmland. Although, as Plaintiff contends, the top portion of the bin could be unbolted and moved to another site, to do so would require leaving the bottom portion of the bin attached to the foundation and a new bottom ring would have to be installed. Furthermore, there can be no question that the grain bin added value to the farming operation and made it more useful. Indeed the structure was being utilized to dry grain, part of the farming process, when the Plaintiff sustained his injuries. Thus, the court finds

that the grain bin constitutes an improvement to real property within the customary meaning of the term and is subject to the six-year limitations period in section 15–1–41.

Although factual considerations may necessarily be involved in determining whether an article of property is an "improvement to real property," on the basis of the undisputed facts, the court is of the opinion that it does not constitute a genuine issue of material fact which would preclude summary judgment. *See Fluor Corp.*, 514 So.2d at 1231.

b. *Protection of Manufacturers*

GSI offers no dispute that it was the designer of the grain bin structure as well as the manufacturer of the component parts which were erected by Lowry Storage. Plaintiff, however, contends that GSI should be classified as an original equipment manufacturer, an entity not within the bounds of section 15–1–41. In support of this argument, Plaintiff relies exclusively on *McIntyre v. Farrel Corp.*, 680 So.2d 858 (Miss.1996), wherein the Mississippi Supreme Court, on certification from the Fifth Circuit, addressed the scope of section 15–1–41. The court, after exhaustive review of Mississippi case law, cases of other jurisdictions, and the legislative history of section 15–1–41, concluded that by setting forth a statute of repose in the limited context of improvements to real property, the Legislature clearly did not intend for manufacturers to be within the protected class of parties under section 15–1–41. *Id.* at 862. In answer to the certified question, the court held:

[A]n original equipment manufacturer that designs, manufactures, and ships a completed piece of industrial machinery is not an entity that performs or furnishes the "design, planning, supervision of construction, or construction" of an im-

provement to real property for purposes of § 15–1–41.

*Id.* at 866.

 In the case at bar, Lowry Storage ordered from GSI a grain drying and storage system. GSI complied and shipped the following materials to Lowry: grain bin roof, side walls, planked floor and floor supports, base attachment ring, nuts, bolts and other fasteners, and a grain drying system (heater, fan, electric motor), which were thereafter erected by Lowry. Plaintiff's claims focus on the Defendant's alleged negligent design of the planked floor and the underfloor auger or grain dispersal system, which allegedly provided unfettered access to the auger. As noted above, GSI provided the planked floor under the terms of the contract, but it did not provide any materials for the underfloor dispersal system; rather GSI provided an instructional diagram for constructing the floor should an auger system ultimately be utilized. The parties do not dispute that GSI was not the designer, seller, or manufacturer of the under floor auger, instead Plaintiff contends that GSI should have "designed out" and hazards that may have been created by the auger.

Applying the above authorities to the instant case, the court is of the opinion that GSI should not be classified as an original equipment manufacturer that designed, manufactured, and shipped a completed piece of industrial machinery. GSI's role in the underlying cause of action was in the nature of a designer, planner and supplier of an improvement to real property. *See McIntyre*, 680 So.2d at 865 ("construction" is a term used in context of construction of buildings and other structures).[2] Section 15–1–41 expressly precludes actions to recover damages for injury to the person arising out of any deficiency in the design or planning of an improvement to real property against any person, firm or corporation performing or furnishing the design or planning of an

---

**2.** Notwithstanding the above conclusion, the court has grave concerns regarding the alter-

ation of the flooring materials after leaving GSI's possession.

improvement to real property more than six years after written acceptance or actual occupancy. The court finds that the Defendant, by furnishing the design, plans, and materials for this improvement to real property, is an entity within the purview of the statute of repose. Accordingly, GSI is entitled to the protection afforded by section 15–1–41.

### c. *Written Acceptance or Actual Occupancy*

■ Having determined that GSI's role in the construction of the grain bin, as designer and planner falls within the purview of section 15–1–41, and that the grain bin is an improvement to real property, the court next addresses whether Plaintiff's claims are barred by the statute's limitations period. The parties do not substantially dispute that the grain bin was erected in 1990 and that final payment for the structure was made on September 11, 1990. The court, therefore, construes this as the date of acceptance of the structure. Because Plaintiff filed the underlying Complaint over six years after acceptance of the structure, section 15–1–41 bars Plaintiff's claims. *See Reich v. Jesco*, 526 So.2d 550, 552 (Miss.1988) (limitations period applies in the case of deficiencies and the clock starts ticking on date of occupancy).

### C. *Breach of Warranty Claims*

■ With respect to Plaintiff's breach of warranty allegations, GSI contends that the claims are time-barred by Mississippi Code Annotated section 75–2–725.[3] The Defendant is correct in that Plaintiff's claims are time-barred, but its reliance on section 75–2–725 is misplaced.

In *Trust Co. Bank*, the Fifth Circuit, addressing an analogous situation, stated

that "[t]he express language of 15–1–41 states that 'no action' may be brought more than six years after occupancy of the building which houses the defective product." *Trust Co. Bank*, 950 F.2d at 1151 n. 3. The court held that section 15–1–41 barred all claims. Similarly, the Mississippi Supreme Court in rejecting a plaintiff's claim that warranty claims were not controlled by section 15–1–41, commented that "[a]n imagination far more vivid than ours is necessary to detect within this language any distinction between deficiencies by reference to a contractual undertaking, including warranties, on the one hand, and deficiency measured by reference to public tort law, on the other." *Reich*, 526 So.2d at 553 (further noting that there is nothing in section 15–1–41 which turns upon the conceptual barriers between contract and tort). Pursuant to the controlling authority cited above, this court holds that the Mississippi statute of repose also bars Plaintiff's warranty claims.

### D. *Negligent Design*

■ For the reasons stated above, Plaintiff's claim of negligent design, construction, selection and/or assembly of the grain bin must also fail. Section 15–1–41 places an express time limitation upon claims arising out of a deficiency in design, planning or construction of a building such as the grain bin. As with Plaintiff's other claims, the Mississippi statute of repose also operates as a bar to Plaintiff's negligence claim.

Accordingly, the Defendant's motion for summary judgment shall be granted. A separate order in accordance with this opinion shall issue this day.

### ORDER

Pursuant to an opinion issued this day, it is hereby ORDERED that:

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made....

Miss Code Ann. § 75–2–725.(5)

---

**3.** Section 75–2–725, which precludes breach of warranty claims six years after the date of delivery of the product, reads in part:

(1) An action for breach of any contract for sale must be commenced within six (6) years after the cause of action has accrued.

1) the Defendant's motion for summary judgment is GRANTED;

2) the Plaintiff's strict liability, breach of warranty, and negligence claims are DISMISSED WITH PREJUDICE; and

3) this case is closed.

All memoranda, affidavits, exhibits and other evidence considered by the court in granting the Defendant's motion are hereby incorporated into and made a part of the record in this cause.